RODMAN M. PRICE and others, executors,

v.

THE WEEHAWKEN FERRY COMPANY and others.

1. The power of eminent domain confers the right to take prop
erty on making just compensation, and that compensation in such case
is, so far as the value of the land is concerned, to be estimated as of
the time when possession was taken, and therefore cannot include the
value of improvements subsequently put upon the property by the
party entering under the right.  But where, as in this case, the entry
was not under that right, the right to take the property on compensa-
tion does not exist, and the party entering and improving does both,
subject to the right of the mortgagee whose mortgage was on the prop-
erty, to sell, for the payment of his debt, the land and the permanent
improvements incorporated with it.  In the one case the maxim
" Quicquid plantatur solo, solo cedit " is not applicable; in the other it is.

2. The Erie Railway Company constructed a track over a part
of certain premises which were covered by a prior mortgage duly
recorded.  The track was built, not under ordinary condemnation
proceedings in eminent domain (on the contrary there was an express
inhibition in their charter against occupying those lands), but under a
grant of right of way from the mortgagors.—Held, that the company
had no right to have the track &c., put on the premises by them,
reserved from a sale under foreclosure of the mortgage.

Bill to foreclose.   On final hearing on pleadings and
proofs.

*Mr. R. Gilchrist*, for complainants.

*Mr. Cortlandt Parker* and *Mr. R. Wayne Parker,* for the
receiver of the Erie Railway Company.

THE CHANCELLOR.

The sole question presented for adjudication on the hear-
ing was, whether, as to the part of the mortgaged premises
on which the railroad of the New York and Fort Lee Rail-
road Company is built, the receiver of the Erie Railway

Company (who holds a lien thereon as against the New York and Fort Lee Company, for cost of construction of the road by the Erie Company, under a contract for the purpose between the two companies) has, as against the complainants' mortgage, an equity to have the superstructure of the road reserved from the foreclosure sale. The railroad was built over the mortgaged premises, not under the provisions of the charter of the railroad company, but under a grant of right of way from the mortgagors, made after the complainants' mortgage (which is dated June 22d, 1859, and was recorded on the 28th of the same month) had been given and recorded. The charter of the railroad company not only gave them no authority to locate their road there, but prohibited them from doing so. It confined them at that place to the land occupied by the Hoboken and Hudson River Turnpike Company, by providing that the railroad should not be laid or constructed upon any lands other than such as the turnpike company should occupy or be entitled to occupy for their turnpike road by virtue of their act of incorporation (March 12th, 1857) and its supplements (*P. L. 1861, p. 399,* § *20*). At the passage of the railroad charter, the turnpike had been located. A supplement to the charter of the turnpike company, passed in 1858 (*P. L. 1858, p. 471*), authorized that company to locate and construct branches to their road, but expressly prohibited them from laying the branches on what are now the mortgaged premises. No branches were ever located under this power.

By an act passed in 1864 (*P. L. 1864, p. 450*), the railroad company was empowered to alter and relocate the turnpike road as they might deem reasonable, expedient and right, but with this limitation, that the location should not be established more than ten feet eastwardly or westwardly at any one point of the then location of the turnpike road, without the consent, in writing, of the owners of the lands over which the new location might be proposed to be made, and that the combined width of the railroad and turnpike

should not exceed sixty feet, except where the turnpike, as then located, should exceed that width from Bull's Ferry to King's Point. Within those limits the mortgaged premises are, and the turnpike is fifty feet wide there. The railroad over the mortgaged premises is at least one hundred feet distant eastwardly from the turnpike. The limitation of the location was undoubtedly due to the fact that, between the foot of the' precipitous rocks (the Palisades) at that place and the river there is but little ground, and economy of space for location of roads was therefore very desirable.

It is manifest that the railroad company, under their charter, have no right to the present location of their road through the mortgaged premises. It is urged, it should be remarked, that the act of 1861 gave them the right to occupy with their road any land which the turnpike company were "entitled to occupy." But the latter company had, previously to that time, located their turnpike on what is now the mortgaged premises, and the act of 1864 prohibited them from laying branches over those premises. They had, then, in 1861, no right to occupy any more or any other part of the mortgaged premises than that on which the turnpike road was located. The railroad company have never had any right to condemn the land on which their road is laid over the mortgaged premises.

It is insisted, however, that an act which was passed in 1871 (*P. L. 1871, p. 945*), by which the contract for building the railroad for which the before-mentioned lien was created, was validated and confirmed, and the money due under it declared to be a first lien on the road "as constructed," is a legislative recognition of the power of the railroad company to locate their road there, notwithstanding the prohibition and limitation before mentioned. But that act, manifestly, was intended to do no more than to authenticate the agreement and recognize the power of the contracting parties, the New York and Fort Lee Railroad Company and the Erie Railway Company, to make it and

3

to establish the lien on the work done.   It contains no indication of intention, on the part of the legislature, to validate the location.   Such was not the object of the act. When, in the third section, it gives power to the New York and Fort Lee Railroad Company to mortgage their property, its language is merely general.   It gives power to borrow money and to secure the loan, by mortgage of the company's property, real and personal, and railroad franchises.

There is no evidence of location by mistake.   No mistake is set up in the answer or alleged.   It is evident that the company understood that they were not exercising their charter power of location in locating the road over the mortgaged premises, for in the agreement under which the road was built they reserve the right to change the location.

Nor is the right to the equity claimed established by the mere fact that the mortgagee knew that the road was being constructed over the mortgaged premises.   There is no paramount power of condemnation here as there was in the case of *North Hudson County R. R. Co.* v. *Booraem, 1 Stew. 450,* no power (the right of eminent domain) to take the property, superior to the rights of both mortgagor and mortgagee.   The power of eminent domain confers the right to take the property on making just compensation, and that compensation, in such case, is, so far as the value of the land is concerned, to be estimated as of the time when possession was taken, and, therefore, cannot include the value of improvements subsequently put upon the property by the party entering under the right.   But where, as in this case, the entry was not under that right, the right to take the property on compensation does not exist, and the party entering and improving does both subject to the right of the mortgagee whose mortgage was on the property, to sell, for the payment of his debt, the land and the permanent improvements incorporated with it.   In the one case, the maxim " *Quicquid plantatur solo, solo cedit* " is not applicable; in the other, it is.

The receiver of the Erie Company is not entitled to have a provision inserted in the final decree that the permanent improvements be reserved from the sale.